<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TREACE MEDICAL CONCEPTS, INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> STRYKER CORPORATION and WRIGHT MEDICAL TECHNOLOGY, INC., <br><br> *Defendants*. | Civil Action No. 24-9763 <br><br> **OPINION** <br><br> October 2, 2025 |

**SEMPER**, District Judge.

**THIS MATTER** comes before the Court on Defendants Stryker Corporation ("Stryker") and Wright Medical Technology Inc.'s ("Wright") (collectively, "Defendants") Motion to Dismiss (ECF 12, "Motion" or "Mot.") Counts XIII to XVI of Plaintiff Treace Medical Concepts, Inc.'s ("Treace") Complaint (ECF 1, "Complaint" or "Compl."). Treace opposed the Motion (ECF 20, "Opposition" or "Opp."), and Defendants replied in support of it (ECF 27, "Reply"). The Court has decided this motion upon the submission of the parties, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, Defendants' Motion is **DENIED**.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff, a Delaware corporation with a principal place of business in Ponte Vedra, Florida, is a medical technology company that developed the Lapiplasty 3D Bunion Correction System, which is a system of "instruments, implants and surgical methods designed to surgically correct all three planes of a bunion deformity and secure the unstable joint, addressing the bunion's root

1

cause." (Compl. ¶¶ 3, 7.) The United States Patent and Trademark Office has awarded Plaintiff numerous patents related to this technology, including the following: U.S. Patent No. 9,622,805 (the "'805 Patent"); U.S. Patent No. 10,874,446 (the "'446 Patent"); U.S. Patent No. 11,039,873 (the "'873 Patent"); U.S. Patent No. 11,116,558 (the "'558 Patent"); U.S. Patent No. 11,602,386 (the "'386 Patent"); U.S. Patent No. 11,602,387 (the "'387 Patent"); U.S. Patent No. 11,911,085 (the "'085 Patent"); U.S. Patent No. 11,937,849 (the "'849 Patent"); and U.S. Patent No. 11,950,819 (the "'819 Patent") (collectively, the "Asserted Patents"). (*Id.* ¶ 4.) The Asserted Patents were issued between July 15, 2014 and April 9, 2024. (*Id.* ¶¶ 64-77.)

Defendant Stryker is a Michigan corporation with a principal place of business in Kalamazoo, Michigan. (*Id.* ¶ 8.) Stryker offers two products at issue in this case: the LapiFuse System and the PROstep Lapidus System. (*Id.* ¶ 18.) Defendant Wright is a Delaware Corporation with a principal place of business in Memphis, Tennessee, and is a subsidiary of Stryker that was acquired in 2020. (*Id.* ¶¶ 9, 88.)

Plaintiff alleges, in relevant part, that Defendants have used their dominant market power in other markets (i.e., the "trauma service line" of products) to stifle competition and increase prices for consumers in the market for tarsal-metatarsal ("TMT") bunion correction systems by engaging in anticompetitive marketing and bundling practices. (*Id.* ¶¶ 131-173.) Specifically, Plaintiff alleges that Defendants are "forcing hospitals to accept TMT Bunion Systems bundled within its trauma service line, even TMT Bunion Systems are not trauma products and even though neither TMT Bunion Systems nor other foot and ankle products have traditionally been included in bundled service line agreements at all, let alone within the trauma service line." (*Id.* ¶ 187.) Plaintiff further claims that "Stryker has engaged in *de facto* tying by structuring its bundled service line rebates so as to effectively tie the trauma service line which it is dominant to the IDN's

2

purchase of Stryker TMT Bunion Systems, with the result that IDNs are induced to purchase all, substantially all, or significantly more of the Stryker TMT Bunion Systems and are penalized for purchasing the Lapiplasty System or any other competitive systems." (*Id*. ¶ 197.)

On October 14, 2024, Plaintiff filed the instant lawsuit against Defendants, asserting twelve counts of patent infringement and four counts of federal and state antitrust violations: one claim each under Section 1 of the Sherman Act and Section 3 of the Clayton Act, one claim for unlawful restraint of trade under the New Jersey Antitrust Act, and one claim for unlawful interference with prospective economic advantage. (*Id*. ¶¶ 245-676.)  On January 24, 2025, Defendants moved to dismiss the four federal and state antitrust claims of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*See generally* Mot.)  On February 18, 2025, Plaintiff filed its Opposition.  (*See generally* Opp.)  On March 4, 2025, Defendants filed their Reply.  (*See generally* Reply.)

## II.  **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).  As a result, a plaintiff must "allege sufficient

facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id*. at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). The court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorably to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, No. 10-02945, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

"For plaintiffs suing under federal antitrust laws, one of the prudential limitations is the requirement of 'antitrust standing.'" *Ethypharm S.A. France v. Abbott Lab'ys*, 707 F.3d 223, 232 (3d Cir. 2013) (citing *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 264 (3d Cir.1998)). When determining whether a plaintiff has antitrust standing, the reviewing court must consider:

> (1) the causal connection between the antitrust violation and the harm to the plaintiff and the intent by the defendant to cause that harm, with neither factor alone conferring standing; (2) whether the plaintiff's alleged injury is of the type for which the antitrust laws were intended to provide redress; (3) the directness of the injury, which addresses the concerns that liberal application of standing principles might produce speculative claims; (4) the existence of more direct victims of the alleged antitrust violations; and (5) the potential for duplicative recovery or complex apportionment of damages.

*Id*. at 232-233 (citing *In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1165–66 (3d Cir. 1993).

### III. ANALYSIS

In their Motion, Defendants contest Plaintiff's antitrust claims by arguing first that Plaintiff "lacks standing as an antitrust plaintiff." (Mot. at 9.) They claim that Plaintiff fails to state an antitrust injury because "Treace's injury is that it lost some business to a new competitor and *might* be at risk of losing its number one position in the market." (*Id*. at 14.) Defendants also argue:

> "Treace's Complaint fails to adequately plead an unreasonable restraint and should be dismissed because it fails to adequately allege: [a] typing product with which Stryker bundles TMT Bunion Systems in which Stryker has dominant market power; [a] well-defined antitrust market for a tied product in which Stryker has substantially foreclosed competition; and [t]hat 'the United States' is an appropriate geographic market for any relevant product market in this case

(*Id*. at 17.) Finally, Defendants argue that the claim for intentional interference under New Jersey law should be dismissed because Plaintiff has failed to plead facts sufficient the malice or intent requirement. (*Id*. at 29-31.)

In its Opposition, Plaintiff argues that its Complaint accuses Stryker of three types of anticompetitive behavior: exclusive dealing, anticompetitive bundling, and tying. (Opp. at 9.) Plaintiff asserts that "'the existence of antitrust injury is not typically resolved through motions to dismiss.'" (*Id*. at 11) (citing *Schuykill Energy Res., Inc. v. Pa. Power & Light Co*., 113 F.3d 405, 417 (3d Cir. 1997).) Plaintiff points to specific examples in the Complaint in which it alleges that Defendants' conduct is harmful to competition in the TMT Bunion Systems market. (*Id*. at 12-13.) Plaintiff then distinguishes the cases Defendants cite in their Motion from the present case. (*Id*. at 13-15.) Plaintiff next argues that it has sufficiently pled the relevant product markets (TMT bunion correction systems) and potential geographic market (the United States). (*Id*. at 19-30.) Plaintiff then disputes Defendants' characterizations of its Complaint, arguing that Plaintiff has pled sufficient facts to show that Defendants' bundling practice foreclose portions of the relevant

5

market.  (*Id*. at 30-35.)  Finally, Plaintiff argues that it has sufficiently pled a claim for intentional interference with a prospective economic opportunity.  (*Id*. at 35-40.)

In Reply, Defendants reiterate their argument that Plaintiff lacks antitrust standing, attacking Plaintiff's argument that the issue of antitrust injury is not typically decided at the motion to dismiss stage.  (Reply at 1-5.)  They argue that in this case "Treace is the self-admitted incumbent trying to keep out a competitor."  (*Id*. at 7.)  Defendants next argue that "Treace steadfastly ignores the fact that its lawsuit fundamentally and illogically seeks to use antitrust law to eliminate competition."  (*Id*. at 9.)  Regarding the unreasonable restraint claim, Defendants argue that Treace has failed to "identify what product Stryker allegedly has dominant market power in."  (*Id*. at 10.)  Then they argue that Treace has not adequately alleged: a well-defined product market (*id*. at 9-13); a well-defined geographic market (*id*. at 13-15); or substantial foreclosure of a market (*id*. at 15-18).  Finally they argue that Treace has not adequately alleged intentional interference.  (*Id*. at 18-20.)

The threshold question for the Court to address is whether Plaintiff has antitrust standing. Again, Plaintiff alleges that "Stryker has engaged in anticompetitive bundling whereby it conditions discounts and rebates in its trauma service line on the purchase of TMT Bunion Systems, which are not trauma systems, and which have not traditionally been subject to bundled service line agreements and bundled rebates by virtue of being new products and being in the foot and ankle space." (Compl. ¶ 638.)  Treace's position as the market incumbent in the TMT bunion correction systems space gives the Court pause when considering Plaintiff's antitrust standing, as it is difficult to view the entry of a new player (i.e., Stryker) into that space as anything but an increase in competition.  "[I]t is inimical to the antitrust laws to award damages for losses stemming from continued competition." *Phila. Taxi Ass'n, Inc v. Uber Techs., Inc.*, 886 F.3d 332,

338 (3d Cir. 2018). Thus, it is not clear to the Court at this point that the injuries of which Plaintiff complains are of the sort for which "the antitrust laws were intended to provide redress." *Ethypharm*, 707 F.3d at 232-233 (3d Cir. 2013). As such, Counts XIII, XIV, and XV are hereby dismissed without prejudice.

Plaintiff's claim for intentional interference with a prospective economic advantage must also be dismissed. "Under New Jersey law, tortious interference has four elements: (1) a reasonable expectation of economic advantage to plaintiff, (2) interference done intentionally and with malice, (3) causal connection between the interference and the loss of prospective gain, and (4) actual damages." *Shire US, Inc. v. Allergan, Inc.*, 375 F. Supp. 3d 538, 558 (D.N.J. 2019) (internal quotations omitted). Here, as in *Allergan*, "the only improper conduct on which Plaintiff bases its claim for tortious interference is Defendants' alleged anticompetitive activity[,]" and "[a]s a result, because the Court is dismissing Plaintiff's antitrust counts, it also dismisses Plaintiff's tortious interference count." *Id.* Count XIV is accordingly dismissed without prejudice.

### IV. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is hereby **GRANTED**, and Count XIII-XVI of the Complaint are **DISMISSED** without prejudice. An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig: Clerk
cc: Michael A. Hammer, USMJ
 Parties